STATE OF MAINE

KENNEBEC, ss.

STATE OF MAINE,

Plaintiff

v.

FREDERIC WEINSCHENK
and RICK WEINSCHENK
BUILDERS, INC.,

Defendants

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-244
SKS- KEN- 12/03/2002

INJUNCTION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

JAN 7 2003

Defendants Frederic Weinschenk and Rick Weinschenk Builders, Inc., having

been declared in violation of the Unfair Trade Practices Act, are hereby ENJOINED and

are ORDERED as follows:

Frederic Weinschenk and Rick Weinschenk Builders, Inc., their agents, servants,

officers, employees and attorneys, and those persons in active concert or participation

with them who receive actual notice of this injunction are permanently enjoined from

building or constructing residential dwellings in the State of Maine unless:

A.     Defendants employ an engineer who is registered with the Maine Board

of Professional Engineers to certify that the home is built to applicable codes and to

generally accepting building practices; and

B.     Defendants have all building plans for single family residences reviewed

and stamped by a Maine licensed Engineer or Architect.

C.     Defendants have submitted a copy of all advertising or other

promotional materials and contract forms which will be used, to the Office of the

Attorney General for that office's information and review.

D.     Defendants have submitted to the Office of the Attorney General a copy

of the contract and specifications for each house.

So ordered.

Dated: December ___23___, 2002
      Time:___9:30 AM___

S. Kirk Studstrup
Justice, Superior Court

STATE OF MAINE                          SUPERIOR COURT
                                        CIVIL ACTION
KENNEBEC, ss.                           DOCKET NO. CV-00-244


STATE OF MAINE,

        Plaintiff

        v.                              **JUDGMENT AND ORDER**

FREDERIC WEINSCHENK and
RICK WEINSCHENK BUILDERS,
INC.,

        Defendants


This matter comes before the court on the complaint of the plaintiff State of Maine through its Attorney General alleging various violations of the Unfair Trade Practices Act (5 M.R.S.A. §§ 206-216) ( UTPA). The matter was tried to the court without a jury. After fully considering the testimonial and other evidence, the court concludes that the plaintiff is entitled to judgment and injunctive relief.

## Background

In order to fully appreciate the complaints concerning the home construction business of the defendants, it is necessary to place them within a context. Much of this background information comes from the testimony of Mr. Weinschenk himself.

Construction has been the Weinschenk family business for several generations, so it was natural that Frederic Weinschenk should be inclined toward that activity. Early on, Weinschenk did repair work to shingle houses in the Hamptons area of Eastern Long Island. Echoes of those shingled houses appear in his designs to this day. In the 1970's, Weinschenk built many houses in Vermont, working with some young, Yale-trained architects, though he himself has no formal training in engineering or

1

architecture. In the mid-1980's, Weinschenk moved to Maine and began a development in Cape Elizabeth called "Elizabeth Farms." Homes in this development were what Weinschenk describes as "high end" homes costing $175,000 and up. Though initially successful, bank problems in the late 1980's ended the development.

In the early 1990's, Weinschenk did research into affordable housing and designed several smaller shingle-style houses. His goal was to build 1,500 to 1,600 square foot houses for the $100,000 to $140,000 market. The initial units sold quickly and Weinschenk started Rick Weinschenk Builders, Inc., to build more. Based on this success, Weinschenk moved to larger developments at Cottage Park, followed by Summer Place, and Willow. The land for the developments passed through another Weinschenk entity, Cottage Park, Inc.

All but one of the homes constructed in Cottage Park, Summer Place, and Willow were designed by Weinschenk doing business as Cottage Design Co. The plan for each house may have started with an existing design, but was then modified to try to incorporate as many features sought by the owners as possible. As a result, most of all of the houses are one of a kind. As described by Mr. Weinschenk, the houses are not predictable, having larger open spaces and being fun to live in. Although the court did not take a view of these houses, it is clear from the photographic exhibits that these are eye catching houses with many intersecting roof lines and fixed glass windows adding to the features. Although many of the homeowners who testified had complaints about the houses, none of them complained about the design. In fact, most owners who testified said that they would not sell their homes despite the defects they had found, and those who have sold their homes have realized a substantial profit on the sale. One witness described Weinschenk as a "charming and talented designer," before

2

going on to list the various problems in the house.

As noted,, at the same time that Weinschenk provided well designed houses, he also attempted to make them affordable. The houses he built in Elizabeth Farms in the late 1980's were built at $100 to $150 per square foot plus the cost of the lot. This was upscale housing compared with the $80 per square foot construction cost for other houses. In the Portland houses built during the 1990's, Weinschenk tried to get the cost to $60 per square foot, creating a new market. In order to build for 25 to 30% less than previous construction, Weinschenk worked on every detail to eliminate cost and overhead. These cost trimming efforts included construction of his own windows on site and trim detail. In addition, Weinschenk would buy materials in bulk, use cheap but very serviceable fixtures, install the smallest electric panel that would work and purchase packages of appliances. As Weinschenk described it, he used cheap materials in a clever fashion. The result has been a number of houses which are very attractive and well designed, but are "under built" in the sense that they lack the quality of materials and workmanship one would expect in a house with custom designed features and appearance.

Not long after families moved in, many of the houses began to develop problems. Some problems were of the "punch list" variety typical in most new houses; others were more serious. Although there are some problems unique to each house, nearly all of the houses included in the plaintiff's list suffered from leaking roofs and leaking windows, particularly the fixed glass windows manufactured on site. Ironically, interesting roof lines and creative use of glass are two of the features which make these houses so attractive, but they are the major sources of problems. The complex roof lines plus the use of metal roofing made installation difficult for workers who were not

very experienced in the medium and left the roofs more prone to leaks. The leaky windows may be the result of some substandard sealants, but the defendants must be held liable as the builders of the windows.

The number of complaints about houses in the three Portland developments finally resulted in this suit brought by the Attorney General seeking remedies for unfair trade practices as the result of violation of building codes, violation of accepted construction practices, misrepresentations, violations of express and implied warranties, and violation of the Home Construction Contract Act (10 M.R.S.A. §§ 1487-1490). The suit is properly brought by the Attorney General under the UTPA as in the public interest to protect future customers. 5 M.R.S.A. .§ 209.

## Discussion

With the background set forth above, the court will now consider individually the remaining counts of the complaint.[1]

**Count I**

Count I of the complaint alleges that the defendants engaged in unfair and deceptive acts by selling houses that do not comply with applicable building codes. Many of the complaints concerning alleged code violations have to do with measurements such as the depth of stair winders or the height of railings or the dimensions of window egress. Each of the points is disputed, with the defendants arguing that to the extent that there may be technical violations, they have been permitted by the Portland Code Enforcement Officers. The court is willing to accept the defendants' position that code enforcement is a somewhat flexible concept and that

---

[1] Cottage Park, Inc. has been dismissed as a defendant, and the plaintiff has informally dismissed Count V of its complaint which sought damages for violations of Home Construction Act.

technical violations can be excused so long as the digression does not represent a major violation of the safety goals of the code. Since each of these houses received a Certificate of Occupancy after review by the code enforcement officials, the plaintiff has failed to prove such material and pervasive breach of any applicable building code that it would amount to an unfair practice. Therefore, as to count I, judgment will be for the defendants.

**Count II**

In count II, the plaintiff alleges that the defendants have engaged in a pattern or practice of unfair or deceptive acts by selling houses that are defective and that do not comply with generally accepted construction practices. The court agrees, particularly with regard to the roofing systems and windows. It seems to the court that the quintessential definition of a house must include protection from the elements. At a minimum, there should not be the type of substantial leaks from the roof system and windows almost universally described by the house owners who testified. Also, these were not subtle defects that would require a long time to detect; in most cases the leaks were readily apparent with the first rainstorm after occupancy. The defendants obviously knew about these problems from the individual complaints they received and attempted repairs, but there is no persuasive evidence that the defendants changed their construction practices to avoid similar problems in future homes. In summary, the court finds the leaking roofs and windows to be major defects and substandard construction practices are of a pattern which constitute an unfair trade practice.

There was also evidence of individual defects or construction practices, such as construction of retaining walls and foundation cracks, which are serious but of a more individual nature. For example, perhaps the most serious defects in terms of potential

for future damage and cost of repair is the major crack in the foundation which virtually bisects the Novotny house. Although not part of a pattern in the sense of the roofs or windows, this defect is a prime example of poor workmanship and will be considered for purposes of restitution.

Judgment on count II will be for the plaintiff.

**Count III**

In count III, the plaintiff alleges that the defendants engaged in unfair and deceptive acts or practices by misrepresenting to consumers the quality of the construction of the homes. The court again agrees. There is nothing inherently wrong with shaving costs to bring well designed housing to consumers who otherwise might not be able to afford the personalized features. Also, using cheap materials in a clever fashion has been a hallmark of the good, frugal homebuilder/owner. However, the court is satisfied from the extensive evidence that the defendants' customers did not understand that this was a major part of the defendants' market planning and construction practices. If the defendants had represented their houses as "Innovative design and fair quality," this matter may not have been before the court. Instead, the emphasis throughout the defendants' advertising and personal contacts with prospective customers was that the homes would be of good quality. Nor would these prospective buyers have had reason to believe that they were not getting good quality, since the excellent design work tended to mask the corners that had been cut in construction. The individuals for whom the defendants built houses received good value, as witnessed by current selling prices for those homes, but it was not the value that they had reason to expect. Thus, the defendants' representations concerning the quality of construction were misrepresentations and constitute unfair and deceptive acts

6

or practices. Judgment will be for the plaintiff on count III.

**Count IV**

In count IV, the plaintiff alleges a pattern of not honoring expressed or implied warranties on the houses. Here, the evidence is mixed. In some cases the defendants made timely and effective repairs to correct defects; in many cases they did not. Although the defendants may remain liable to individual homeowners for specific warranty violations, the plaintiff has not presented a sufficient pattern from which the court find a violation of the Unfair Trade Practices Act.

Therefore, judgment on this count will be for the defendants.

## Remedies

As remedies, the plaintiff seeks a declaration of violation of the Unfair Trade Practices Act, injunctive relief, restitution, rescission or repair, and civil penalties, plus attorney's fees and other costs. These remedies will be discussed separately.

A.    Declaration. The court declares that Frederic Weinschenk and Rick Weinschenk Builders, Inc. have violated the Unfair Trade Practices Act as set forth above.

B.    Injunction The court will issue an injunction by separate Order designed to protect the public from future unfair trade practices, but which will not present Mr. Weinschenk from developing and marketing his designs or from doing actual development and construction with appropriate safeguards.

C.    Restitution. The plaintiff also seeks restitution for individual homeowners for whom evidence of defects was presented. The court agrees that restitution is in order, but has difficulty in determining an appropriate amount of restitution in each case given the wildly divergent expert opinions in this area. The plaintiff's expert, Alan

7

Mooney, has costed every defect he found in his inspections and did so at what appears to be top dollar rates. It is his opinion that the roof systems and windows in the majority of homes are so defective that they cannot be repaired and must be replaced. The defendants' expert, Alexander Hutcheon, has a much more restricted list and suggest that repair will be sufficient and replacement will not be necessary. A fair restitution amount probably lies between the two extremes. The court will use Mr. Mooney's figures, but limit the restitution to the roof and window defects since they are primary bases for the finding of unfair trade practices. One exception will be the Novotny restitution, which must include the seriously needed foundation work. Other exceptions are for the Hutchins and Buell residences which will be limited to out-of-pocket expenses. The total amount of restitution will be $221,256, allocated as follows:

| | |
|---|---|
| Mullen | $22,400 |
| Tufts | $25,550 |
| Kuhn | $30,360 |
| Thibodeau | $19,360 |
| O'Grady | $14,350 |
| Coutreau | $18,680 |
| Novotny | $75,556 |
| Hutchins | $ 6,000 |
| Buell | $ 9,000 |

D. Civil penalties and costs. The plaintiff also seeks civil penalties under the UTPA plus the plaintiff's costs including the cost of investigation and attorney's fees. Considering the large amount of restitution that is ordered and should receive priority, the court declines to impose any additional civil penalties. However, the court will award the plaintiff's costs, including attorney's fees, upon presentation of a bill of costs and fees, and attorney's affidavit.

E. Respective liability of the defendants. The final question is who should be liable for the restitution and order of costs and fees. Defendant Frederic Weinschenk

8

argues that he is not individually liable because restitution is predicated on the construction contracts which were between a corporation, Rick Weinschenk Builders, Inc., and the home buyers. However, the evidence shows that the corporation was simply acting as Frederic Weinschenk's alter-ego and that Frederic Weinschenk personally violated the Unfair Trade Practices Act. Therefore, the liability for payment of restitution and costs shall be joint and several between Mr. Weinschenk and Rick Weinschenk Builders, Inc.

## ENTRY

For the reasons stated above, the entry will be:

(1)     Judgment for the defendants on Counts I and IV.

(2)     Judgment for the plaintiff on Counts II and III.

(3)     The defendants are declared to have violated the Unfair Trade Practices Act.

(4)     The defendants are enjoined by separate Order.

(5)     The defendants are jointly and severally ORDERED to pay restitution in the amount of $221,256, payable through the Office of the Attorney General for the benefit of homeowners consistent with this opinion.

(6)     The defendants are jointly and severally ORDERED to pay the plaintiff its costs and attorney fees as will be determined upon submission of the plaintiff's bill of costs and attorney's affidavit.

Dated:  December __23__, 2002          _____
                                       S. Kirk Studstrup
                                       Justice, Superior Court

9

STATE OF MAINE - PLAINTIFF

Attorney for: STATE OF MAINE
LINDA CONTI
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

Attorney for: STATE OF MAINE
CAROLYN SILSBY-HARDY
PO BOX 742
9 ELM STREET
CAMDEN ME 04843

vs
FREDERICK D WEINSCHENK   - DEFENDANT

Attorney for: FREDERICK D WEINSCHENK
DAVID HIRSHON
TOMPKINS CLOUGH HIRSHON LANGER
PO BOX 15060

PORTLAND ME 04112-5060

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2000-00244

DOCKET RECORD

Filing Document: COMPLAINT                 Minor Case Type: UNFAIR TRADE PRACTICES
Filing Date: 11/20/2000

## Docket Events:

03/20/2002 FILING DOCUMENT - COMPLAINT FILED ON 11/20/2000

NOTE - PRIOR ENTRIES IN MANUAL DOCKET ENTERED ON 11/20/2000

03/20/2002 Party(s):  STATE OF MAINE
ATTORNEY - RETAINED ENTERED ON 11/20/2000
Plaintiff's Attorney: LINDA CONTI

03/20/2002 ATTORNEY - RETAINED ENTERED ON 12/01/2000
Defendant's Attorney: DAVID HIRSHON

03/20/2002 Party(s):  FREDERICK D WEINSCHENK
MOTION - MOTION PARTIAL SUMMARY JUDG FILED ON 12/26/2001
WITH MEMORANDUM OF LAW, DRAFT ORDER, NOTICE OF HEARING

04/03/2002 Party(s):  FREDERICK D WEINSCHENK
MOTION - OTHER MOTION FILED ON 04/03/2002
Defendant's Attorney: DAVID HIRSHON
MOTION TO REPORT THE COURT'S DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO
M.R.APP. P. 24(C) AND/OR MOTION FOR RECONSIDERATION, MEMORANDUM OF LAW IN SUPPORT ON
MOTION TO REPORT DECISION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, PROPOSED ORDER,
PROPOSED ORDER AND REQUEST FOR HEARING.

04/19/2002 Party(s):  STATE OF MAINE
OTHER FILING - OPPOSING MEMORANDUM FILED ON 04/18/2002
PLTFS. MEMORANDUM OF LAW IN OPPOSITION TO DFTS. MTN. TO REPORT COURT ORDER DENYING PARTIAL